This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**


**DAVID and KARIN SMITH**
**Husband and Wife,**

    Plaintiffs-Appellants,

v.                                        **NO. 29,598**

**AMERICAN PRIDE HOMES, L.L.C.,**
**and PIEDMONT GENERAL CONSTRUCTION, INC.,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Adam D. Rafkin, P.C.
Adam D. Rafkin
Ruidoso, NM

for Appellants

Charles E. Hawthorne
Ruidoso, NM

for Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Plaintiffs David and Karen Smith appeal from a judgment in favor of Defendants American Pride Homes, L.L.C. (APH), and Piedmont General Construction, Inc. (Piedmont). We issued a notice of proposed summary disposition, proposing to uphold the judgment. Plaintiffs have filed a memorandum in opposition, which we have duly considered. Because we remain unpersuaded, we affirm.

The underlying dispute arose out of a residential construction project. To briefly reiterate, Plaintiffs entered a contract with APH to purchase a lot and a home. [DS 2; RP 6-15] Throughout the process, Plaintiffs appear to have dealt with Rick and Mary Jo Riddle, who own and operate APH. [DS 3-4] After the construction was substantially complete, a dispute arose between Plaintiffs and APH. [DS 2] APH asserted that the general contractor for the construction project was Piedmont, an entity licensed in New Mexico with its principal place of business in Arizona. [DS 3-4] Both in the district court and on appeal Plaintiffs have disputed this assertion, taking the position that APH acted as the general contractor throughout the construction process. [DS 3, fn. 1] Insofar as APH was unlicensed, Plaintiffs contend that APH could pursue no claims of any kind and should be required to disgorge monies paid by Plaintiffs. [DS 3, fn. 1] *See Gamboa v. Urena*, 2004-NMCA-053, ¶

15, 135 N.M. 515, 90 P.3d 534 ("[C]ontracts entered into by unlicensed contractors are contrary to public policy and unenforceable. . . . If a consumer has already paid an unlicensed contractor, the consumer may recover the amounts paid, . . . even if the contractor's work was satisfactory." (citations omitted)).

In the notice of proposed summary disposition, we explained that we understand the central issue on appeal to be the identity of the general contractor and the status of its licensure. [CN 3] To the extent that Piedmont genuinely acted as the general contractor, it was duly licensed, and consequently Plaintiffs could not avoid their contractual obligations. Conversely, to the extent that APH genuinely acted as the general contractor, it is unlicensed, and Plaintiffs would be entitled to recover amounts paid.

Previously, we noted that Plaintiffs' contention that APH acted as the general contractor appeared chiefly to be based on the fact that one of the owners and operators of APH, Mary Jo Riddle, handled many of the day-to-day activities associated with the construction. [DS 4-5; RP 337, 339, 522, 526] To the extent that her activities fulfilled the functions of a general contractor, and to the extent that she undertook those activities in her capacity as an owner and operator of APH, we understand Plaintiffs to argue that APH should properly have been identified as the

3

general contractor, rather than Piedmont.

As we observed in the notice of proposed summary disposition, the problem with Plaintiffs' argument is that Mary Jo Riddle claimed to be an employee of Piedmont. [RP 336] To the extent that Mary Jo Riddle's activities were undertaken in her capacity as a Piedmont employee, her activities could not be said to have rendered APH the general contractor. Moreover, as a Piedmont employee, she was not required to maintain a separate license—she could simply act as Piedmont's agent. *See Reule Sun Corp. v. Valles*, 2008-NMCA-115, ¶ 11, 144 N.M. 736, 191 P.3d 1197 ("[A]n employee is not a contractor and is therefore not required to obtain a contractor's license."), *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267; *Fowler Bros., Inc. v. Bounds*, 2008-NMCA-091, ¶ 28, 144 N.M. 510, 188 P.3d 1261 ("Employees are not subject to the licensing requirements for contractors in . . . New Mexico."). This was the determination ultimately reached by the district court below. [RP 522, 526]

In their memorandum in opposition, Plaintiffs attack the characterization of Mary Jo Riddle as a Piedmont employee. [MIO 3-5] There are numerous factors that may be taken into consideration when determining whether an individual is acting as an employee or as an independent contractor. *See Reule*, 2008-NMCA-115, ¶ 13;

*Fowler*, 2008-NMCA-091, ¶ 30. Among these factors, Plaintiffs continue to focus on the alleged lack of supervisory oversight from Piedmont. [DS 5; MIO 4-5] However, as we stated in the notice of proposed summary disposition, the record reflects that Mary Jo Riddle testified that she conferred regularly with Piedmont about decisions with which she was involved and that the supervision of the actual construction process was conducted by individuals other than herself who had been employed by Piedmont for that specific purpose. [CN 4; RP 337-38, 361, 372, 522, 525-526] In light of this testimony, which Plaintiffs conspicuously ignore in their memorandum in opposition, but which we credit on appeal, *see Melton v. Lyon*, 108 N.M. 420, 422, 773 P.2d 732, 734 (1989) ("[T]he reviewing court must view the evidence in the light most favorable to support the finding, and all reasonable inferences in support of the court's decision will be indulged."), there appears to be sufficient evidence to establish that Piedmont supplied a degree of supervision. Although we understand Plaintiffs to urge reliance on conflicting evidence and inferences, [MIO 3-6] we are not at liberty to entertain such arguments. *See generally Creley v. W. Constructors, Inc.*, 79 N.M. 727, 728, 449 P.2d 329, 330 (1969) ("It is for the trier of the facts to determine the weight to be given to the evidence and the credibility of witnesses[,] and to resolve conflicts in the testimony of a single witness." (citation omitted)); *Dawley*

*v. La Puerta Architectural Antiques, Inc.*, 2003-NMCA-029, ¶ 12, 133 N.M. 389, 62 P.3d 1271 (filed 2002) ("On appeal, we do not re-weigh the evidence or substitute our judgment for that of the fact-finder, but determine whether substantial evidence supports the result reached."); *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71-72, 716 P.2d 645, 649-50 (Ct. App. 1986) ("Conflicts in the evidence, even in the testimony of a single witness, present a fact question for the trial court to decide.").

We further understand Plaintiffs to contend that Piedmont should not be regarded as the general contractor because Plaintiffs' lender paid monies to APH rather than Piedmont, because APH maintained one or more accounts with material suppliers, and because APH paid subcontractors. [MIO 2-4, 6] However, Plaintiffs have cited no authority whatsoever to the effect that such financial arrangements dictate the identity of the general contractor. Therefore, to the extent that Plaintiffs advance this argument as a strictly legal proposition, we need not consider it. *See Vigil v. Fogerson*, 2006-NMCA-010, ¶ 32, 138 N.M. 822, 126 P.3d 1186 (filed 2005) (observing that we do not consider propositions that are unsupported by citation to authority). To the extent that Plaintiffs argue that the foregoing financial dealings give rise to an evidentiary inference that APH acted as the general contractor, we observe simply that we do not re-weigh the evidence. *Dawley*, 2003-NMCA-029, ¶

12. "[T]he possibility that on similar facts another factfinder may have drawn different inferences does not mean we must reverse here." *Gillingham v. Reliable Chevrolet*, 1998-NMCA-143, ¶ 14, 126 N.M. 30, 966 P.2d 197, *overruled on other grounds by Fernandez v. Española Pub. Sch. Dist.*, 2005-NMSC-026, 138 N.M. 283, 119 P.3d 163.

We also understand Plaintiffs to assert that Piedmont should not be regarded as the general contractor because Plaintiffs' contract was with APH, rather than Piedmont, and because Piedmont maintained no office or signage on location. [MIO 4] Once again, however, Plaintiffs have cited no authority to suggest that these are material considerations. *See generally In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (providing that where a party cites no authority to support an argument, we may assume no such authority exists). In any event, as we observed in the notice of proposed summary disposition, Piedmont's involvement with the construction and its status as the licensed general contractor appear to have been communicated to any and all interested individuals by virtue of the display of Piedmont's credentials in APH's office and by virtue of the posting of construction permits reflecting that Piedmont was the contractor. [RP 523-524] We are aware of nothing that would require more in this context.

Finally, Plaintiffs point to evidence that Piedmont "was incommunicado" at the time of trial. [MIO 4-5] However, the relevance of this state of affairs seems marginal, at best. The legal issues clearly revolve around events and conduct that occurred previously, in the course of the construction of Plaintiffs' home. As a result, we fail to see how Piedmont's subsequent absence could be deemed controlling in any sense. To the extent that Plaintiffs argue that APH's continuing activities on other projects after Piedmont's disappearance gives rise to an inference that Piedmont was uninvolved with the earlier construction of Plaintiffs' residence, we note once again that Plaintiffs' argument runs afoul of the standard of review. *See generally Stetz v. Skaggs Drug Ctrs., Inc.*, 114 N.M. 465, 471, 840 P.2d 612, 618 (Ct. App. 1992) ("On appeal, all disputed facts are resolved in favor of the prevailing party, and all reasonable inferences are indulged to support the verdict; inferences to the contrary are discarded.").

To summarize, we find all of Plaintiffs' various arguments and assertions concerning APH's status as the general contractor to be unpersuasive. To the extent that Plaintiffs advance strictly legal arguments, the absence of citation to supporting authority is a fatal deficiency. To the extent that Plaintiffs mount evidentiary challenges, the existence of conflicting evidence and inferences renders their

8

assertions unavailing.  Accordingly, for the reasons stated above and in the notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**LINDA M . VANZI, Judge**